COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | | No. 08-07-00076-CV |
| IN RE: CELADON TRUCKING | § | |
| SERVICES, INC., | | An Original Proceeding |
| | § | |
| Relator. | | In Mandamus |
| | § | |
| | § | |

**O P I N I O N**

Relator, Celadon Trucking Services, Inc. (Celadon) seeks mandamus relief from an order

entered by the Honorable Patrick M. Garcia, Judge of the 384th District Court of El Paso County,

denying a motion to quash the notice of deposition of its Chief Executive Officer Stephen

Russell. We find that the real parties in interest did not establish that Mr. Russell has any unique

or superior knowledge of facts in the underlying case; therefore, we will conditionally grant the

relief requested.

This mandamus proceeding arises out of an employment dispute filed by former Celadon

Trucking employees, Mario Martinez and Manuel Luna. Mr. Martinez and Mr. Luna, both

El Paso residents, were employed by Celadon as truck drivers. The two men suffered serious

injuries when a tire on the Celadon tractor trailer they were driving failed and caused a collision.

Both men were initially treated for their injuries in El Paso. Celadon later moved both men to a

company-owned location in Indiana where they received further treatment, and where their

employment was ultimately terminated.

According to the petitions, Celadon contacted Mr. Martinez and Mr. Luna's medical providers in El Paso without authorization and obtained medical releases for the men to travel. Once they arrived in Indiana, the men allege they were forced to live in substandard company housing, where their complaints regarding the living conditions were ignored. Mr. Martinez and Mr. Luna also claim their Indiana physicians ignored their medical complaints, and ultimately the company discontinued their medical benefits. Both claim Celadon coerced them into signing legal documents, which they could not read, and did not understand. Celadon then paid each man what the company referred to as a "settlement" under Indiana law, and terminated their employment.

Mr. Martinez and Mr. Luna brought suit against Celadon under a variety of theories of liability including: fraud; negligence; intentional infliction of emotional distress; false imprisonment; invasion of privacy; conspiracy; and wrongful termination.[1] During discovery, they served a notice of intention to take the deposition of Mr. Stephen Russell, Celadon's chief executive officer. Celadon responded by filing a motion to quash the notice, arguing that Mr. Russell was entitled to protection under the guidelines of *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125 (Tex. 1995). In an affidavit filed in support of the motion, Mr. Russell stated that he has no personal knowledge of facts relevant to the lawsuit.

In response to Mr. Russell's affidavit, Mr. Martinez and Mr. Luna submitted deposition testimony from the chairman of the Indiana Worker's Compensation Commission, G. Terrence

---

[1] The trial court granted Celadon's motion for summary judgment on many of Mr. Martinez's claims. The remaining causes have been expressly limited to wrongful termination, fraud, fraudulent inducement, and negligent misrepresentation. The fraud and misrepresentation claims have been further limited to Mr. Martinez's allegation that a Celadon representative made misstatements related to obtaining his release for light duty work.

Coriden. According to Mr. Coriden's testimony, Celadon's top executive attended a meeting with members of the commission sometime in the late 1990's to discuss Celadon's application to become self-insured within the Indiana worker's compensation system. The Celadon executive, was accompanied by several company attorneys at the meeting. In support of the company's application for self-insurance, the Celadon official explained the organization's practice of treating employee injuries in company dormitories. During the meeting, Mr. Coriden explained that only Indiana's top employers were approved for self-insurance by the commission, and he expressed concerns regarding Celadon's dormitory system and its ability to provide adequate treatment for employees who were not residents of Indiana. Celadon's application for self-insurance was later approved, in part based on assurances made by the Celadon executive who attended the meeting. Mr. Martinez and Mr. Luna maintain Mr. Coriden's testimony rebutted Mr. Russell's statement that he has no unique or superior knowledge of facts related to their claims. They argue, Mr. Coriden's testimony established that Mr. Russell has knowledge of statements made to the Commission which are relevant to their claims against Celadon. The trial court agreed, and denied Celadon's motion to quash. Celadon argues the trial court's order violates the apex depositions guidelines, and is subject to mandamus relief pursuant to *Crown Central*.

Relief by writ of mandamus is only appropriate to correct a clear abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992)(orig. proceeding); *In re El Paso Healthcare Sys.*, 969 S.W.2d 68, 72 (Tex.App.--El Paso 1998, orig. proceeding). In addition, there must be no other adequate remedy at law. *Walker*, 827 S.W.2d at 840.

A clear abuse of discretion, warranting correction by mandamus, occurs when a court

issues a decision which is without a legal basis, or support in guiding principles of law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)(orig. proceeding). With respect to the resolution of fact issues or matters committed to the trial court's discretion, a reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 839-40. The realtor must therefore establish that the trial court could reasonably have reached only one decision. *Id*. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id*. On the other hand, a trial court has no "discretion" in determining what the law is or in applying the law to the facts. *Braden v. Marquez*, 950 S.W.2d 191, 193 (Tex.App.--El Paso 1997, orig. proceeding). Thus, a clear failure to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *In re: El Paso Heathcare Sys.*, 969 S.W.2d at 72. A writ of mandamus is the proper vehicle to attack an order granting discovery. *Id*.

Generally, a party is entitled to discovery that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence. *See* TEX.R.CIV.P. 192.3(a); *Crown Central Petroleum Corp.*, 904 S.W.2d at 127. Parties are generally permitted to take the deposition of, "any person." *Id*. The person noticed for deposition, however, has the right to protection from, "undue burden, unnecessary expense, harassment or annoyance, or investigation of personal, constitutional, or property rights." *See In re: El Paso Healthcare Corp.*, 969 S.W.2d at 72-3.

When the discovering party seeks to depose a high level corporate official, the official (or the corporation on the official's behalf), may file a motion for protective order to prohibit the

deposition under the *Crown Central* guidelines.  *See In re:  Alcatel USA, Inc.*, 11 S.W.3d 173, 175 (Tex. 2000)(orig. proceeding).  A party initiates the protections of the apex deposition doctrine by moving for a protective order to prevent the apex official's deposition.  *Id*.  The motion should be supported by the official's affidavit denying any knowledge of relevant facts.  *Id*.  The burden then shifts to the discovery proponent to arguably show that the official has any, "unique or superior personal knowledge of discoverable information."  *Id*. at 175-76.  If the discovering party is unable to make such a showing, the trial court should grant the motion.  *Id*. at 176.   Thereafter, the deposition should not go forward absent a demonstration by the discovering party that:  (1) there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence; and (2) that less intrusive means of discovery are unsatisfactory, insufficient, or inadequate.  *Id*.

In its sole issue presented for review, Celadon argues the trial court clearly abused its discretion by denying the motion for protective order filed to prevent Mr. Russell's deposition.  According to the affidavit attached to Celadon's motion, as C.E.O. of Celadon Trucking, Mr. Russell was not involved with the day-to-day management of individual truckers.  Mr. Russell further stated that he had no personal knowledge of facts related to the lawsuit as he did not directly supervise or control the activities of Mr. Luna or Mr. Martinez.  He was not aware of the worker's compensation claims filed by Mr. Luna and Mr. Martinez until the lawsuits were filed, and did not participate in any decision making regarding how those claims would be handled by the company.  He concludes by stating that he has no unique or personal knowledge of discoverable information related to the lawsuit.

The real parties in interest do not dispute that this deposition was sufficient to support

Celadon's motion. The primary dispute is whether excerpts from Mr. Coriden's deposition arguably shows that Mr. Russell has any unique or superior personal knowledge of discoverable information. An individual has unique or superior knowledge when he or she is the only person with personal knowledge of the information sought or that arguably possesses relevant knowledge greater in quality or quantity than other available sources. *In re: Alcatel USA, Inc.*, 11 S.W.3d at 179.

Mr. Martinez and Mr. Luna do not dispute that other people, including other Celadon representatives, attended the meeting described by Mr. Coriden. Instead they argue the evidence indicates Mr. Russell personally made statements concerning Celadon's dormitory system and the hardships it posed for out-of-state employees and therefore has unique or superior knowledge of the corporation's policies, the actions taken based on those policies, the purpose behind them, and the company's knowledge and intentions.

This argument amounts to little more than an allegation that as the chief executive, Mr. Russell has specialized insight into Celadon's corporate decision making. An apex deposition will not be permitted based on a claim that the official has knowledge of corporate policy, or ultimate responsibility for corporate decisions. *See In re: El Paso Heathcare Sys.*, 969 S.W.2d at 74.

At most, Mr. Russell's presence at the meeting establishes that he has some knowledge of discoverable information. The first step in the *Crown Central* guidelines requires more than "some knowledge" of discoverable information. *In re: Alcatel USA, Inc.*, 11 S.W.3d at 179. The discovering party must make some showing beyond mere relevance, "such as evidence that a high-level executive is the only person with personal knowledge of the information sought or that

the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources." *Id*. There is nothing in the record at this stage in the proceeding to indicate that Mr. Russell's knowledge of Celadon's discussion with the Commission is superior to the knowledge of the others who attended the meeting. Without such evidence, and absent a showing that Mr. Martinez and Mr. Luna have attempted to obtain the information through less intrusive means, the trial court had no discretion to allow the deposition to proceed.[2] *See id*. at 181.

Because the trial court abused its discretion in denying Celadon's motion to quash Mr. Russell's deposition, we conditionally grant the company's petition for writ of mandamus. We are confident the trial court will vacate its order in accordance with this opinion. The writ will issue only if the trial court fails to comply with this opinion.

June 19, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.

---

[2] Should good faith efforts to obtain the information through less intrusive means prove inadequate, Mr. Martinez and Mr. Luna may return to the trial court and request that the protective order be vacated or modified. *See Crown Central Petroleum Corp.*, 904 S.W.2d at 128.