

# NUMBER 13-25-00125-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE GERMANIA FARM MUTUAL INSURANCE ASSOCIATION

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Chief Justice Tijerina[1]**

Through this original proceeding, relator Germania Farm Mutual Insurance Association (Germania) asserts that the trial court[2] abused its discretion by setting aside an appraisal award. We conditionally grant the petition for writ of mandamus.

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.1 (requiring the appellate courts to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition"); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number CL-23-4262-J in the County Court at Law No. 10 of Hidalgo County, Texas, and the respondent is the Honorable Armando J. Marroquin. *See id.* R. 52.2.

# I. BACKGROUND

Real party in interest Jose Chapa made a claim under his homeowner's insurance policy, issued by Germania, for storm-related damage sustained to his property. After investigating Chapa's claim, Germania concluded that the amount of the covered damages did not exceed Chapa's policy deductible of $9,500. Thereafter, Chapa invoked appraisal under his insurance policy and selected Rick Guerra-Prats as his appraiser. In turn, Germania chose Robert Stephenson as its appraiser. The appraisers did not agree as to the value of Chapa's property damages. Chapa subsequently filed the underlying lawsuit against Germania alleging claims for breach of contract, violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act, and breach of the duty of good faith and fair dealing. In the litigation, Germania filed a motion to compel appraisal, and the trial court granted that motion. Ultimately, the American Arbitration Association (AAA) appointed Jason Spencer as the umpire for the dispute. Spencer entered an appraisal award of $8,976, consistent with the value of the claim as determined by Germania's appraiser. Germania did not pay the award because it was less than Chapa's $9,500 deductible. Spencer and Stephenson signed the appraisal award, but Guerra-Prats did not.

Chapa filed a motion to set aside the appraisal award. Chapa argued that: (1) the appraisal award was issued without authority; (2) the award was premised on mistake or accident; (3) the award failed to comply with the insurance policy; and (4) the award did not represent an honest appraisal of the damages. Chapa did not provide affidavits in support of his motion to set aside the appraisal award but did attach the insurance policy; claims correspondence; communications between members of the appraisal panel;

2

documents pertaining to a previous claim that Chapa had made regarding an earlier storm, including the appraisal award for the damages sustained in that previous storm; and the appraisal award with supporting documentation. Based on the factual allegations in Chapa's motion and the attachments, the appraisal panel experienced difficulties in communicating by email insofar as Spencer's emails to Guerra-Prats frequently "bounced" back, and thus, Stephenson forwarded Spencer's emails to Guerra-Prats.

Germania filed a response in opposition to Chapa's motion to set aside the appraisal award. On August 19, 2024, the trial court granted Chapa's motion and set aside the appraisal award. On October 7, 2024, Germania filed a motion to reconsider the order setting aside the appraisal award, and Chapa filed a response and an amended response to Germania's motion. On January 27, 2025, the trial court denied Germania's motion for reconsideration.

This original proceeding ensued. The Court requested and received a response to the petition for writ of mandamus from Chapa. Germania filed a reply thereto. *See* TEX. R. APP. P. 52.4, 52.5, 52.8.

## II.    MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion; and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833,

3

839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 840.

Trial courts have no discretion to ignore a valid appraisal clause. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009); *In re Acceptance Indem. Ins.*, 562 S.W.3d 645, 649 (Tex. App.—San Antonio 2018, orig. proceeding); *In re State Farm Lloyds*, 514 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). Thus, mandamus is available to remedy certain matters pertaining to the appraisal process. *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404, 412 (Tex. 2011) (orig. proceeding) (granting mandamus relief to enforce the right to appraisal); *In re Allstate Cnty. Mut. Ins.*, 84 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding) ("A refusal to enforce the appraisal process here will prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim.").

### III.  APPRAISAL

An insurance policy establishes the rights and obligations to which an insurer and its insured have agreed. *See In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 270 (Tex. 2021) (orig. proceeding); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018). We interpret insurance policies under the rules of construction that apply to contracts in general. *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 473 (Tex. 2022); *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020). Thus, appraisal clauses should be enforced like any other contractual provision. *Johnson*, 290 S.W.3d at 895. Our primary goal is to

effectuate the parties' intent as expressed in the insurance policy. *Monroe Guar. Ins. v. BITCO Gen. Ins.*, 640 S.W.3d 195, 198–99 (Tex. 2022). "We determine the parties' intent through the terms of the policy, giving words and phrases their ordinary meaning, informed by context." *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds Subscribing to Pol'y No. EE1701590*, 636 S.W.3d 640, 643 (Tex. 2021).

"Appraisal clauses in Texas insurance policies have long provided a mechanism to resolve disputes between policy holders and insurers about the amount of loss for a covered claim." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). The Texas Supreme Court has explained the policies underlying the appraisal process as follows:

> Today, appraisal clauses are included in most property insurance policies. Access to the appraisal process to resolve disputes is an important tool in the insurance claim context, curbing costs and adding efficiency in resolving insurance claims. This Court has reasoned that "[l]ike any other contractual provision, appraisal clauses should be enforced." "[I]n every property damage claim, someone must determine the 'amount of loss,' as that is what the insurer must pay." Appraisal clauses are a means of determining the amount of loss and resolving disputes about the amount of loss for a covered claim.
>
> . . . .
>
> We note that an insurer's use of the policy's appraisal process represents a willingness to resolve a dispute outside of court—often without admitting liability on the claim, or even specifically disclaiming liability—similar to a settlement. An insurer's payment under such circumstances results from a calculated risk assessment that paying the appraisal value will ultimately be less risky or costly than litigating the claims to determine liability. As such, the payment in accordance with an appraisal is neither an acknowledgment of liability nor a determination of liability under the policy . . . .

*Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814, 820 (Tex. 2019) (citations omitted). The supreme court has described "the appraisal process as an efficient and less costly alternative to litigation, requiring 'no lawsuits, no pleadings, no

5

subpoenas, and no hearings.'" *Ortiz*, 589 S.W.3d at 131 (quoting *Johnson*, 290 S.W.3d at 894); *see Barbara Techs. Corp.*, 589 S.W.3d at 814; *In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d at 407.

Appraisal awards do not establish a party's liability, or lack thereof, but instead resolve the amount of the covered loss. *Barbara Techs. Corp.*, 589 S.W.3d at 828; *Ortiz*, 589 S.W.3d at 132; *Johnson*, 290 S.W.3d at 889–90. Thus, "appraisals do not supplant the judicial process." *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 276 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (collecting cases). In general, there are three instances in which the results of an otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was made because of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy. *In re Auto Club Indem. Co.*, 580 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding); *Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 142 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Wells v. Am. States Preferred Ins.*, 919 S.W.2d 679, 683 (Tex. App.—Dallas 1996, writ denied); *Providence Lloyds Ins. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875–76 (Tex. App.—San Antonio 1994, no writ). Further, the supreme court has stated that an appraisal award may be set aside if it does not represent an "honest assessment of necessary repairs." *Johnson*, 290 S.W.3d at 895.

"Appraisal awards made under the provisions of an insurance contract are binding and enforceable, and a court will indulge every reasonable presumption to sustain an appraisal award." *In re Auto Club Indem. Co.*, 580 S.W.3d at 855 (quoting *Lundstrom v. United Servs. Auto Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006,

pet. denied)); *see also Stewart v. Tex. Farmers Ins.*, No. 02-23-00041-CV, 2023 WL 6300726, at *3 (Tex. App.—Fort Worth Sept. 28, 2023, no pet.) (mem. op.); *Richland Trace Owners Ass'n v. Landmark Am. Ins.*, No. 05-20-00944-CV, 2022 WL 1076177, at *2 (Tex. App.—Dallas Apr. 11, 2022, pet. denied) (mem. op.); *In re Tex. Mun. League Intergovernmental Risk Pool*, No. 13-20-00486-CV, 2021 WL 743305, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, orig. proceeding [mand. denied]) (mem. op.). "Because a court indulges every reasonable presumption to sustain an appraisal award, the burden of proof is on the party seeking to avoid the award." *In re Auto Club Indem. Co.*, 580 S.W.3d at 855 (quoting *Lundstrom*, 192 S.W.3d at 87); *see also In re Philadelphia Indem. Ins.*, 2017 WL 5616272, at *2.

## IV.     ANALYSIS

Germania asserts that the trial court abused its discretion by setting aside the appraisal award because Chapa failed to establish that: (1) the award was made without authority; (2) the award was made as a result of fraud, accident or mistake; (3) the award was not made substantially in compliance with the requirements of the policy; and (4) the award was not an honest appraisal of the damages. Germana argues, in the alternative, that it was error to set aside the appraisal award because Chapa's criticisms rest largely with Germania's appraiser, and not the appraisal process itself. In response, Chapa argues that Germania has failed to produce a sufficient mandamus record; he produced sufficient evidence to raise a fact issue regarding the grounds to set aside an appraisal award; and mandamus relief should be denied because Germania delayed seeking relief and it possesses an adequate remedy by appeal.

7

## A.    Incomplete Record

Chapa asserts that Germania has not provided a sufficient record for this Court to review the trial court's ruling "which resulted from an evidentiary hearing." He asserts that Germania was required to either supply a transcript of the hearing or a sworn statement that no evidence was presented at the hearing but it failed to do so.

The relator in an original proceeding has the burden to provide the Court with a record sufficient to support its request for relief. *See* TEX. R. APP. P. 52.7(a); *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding); *In re J.A.L.*, 645 S.W.3d 922, 924 (Tex. App.—El Paso 2022, orig. proceeding); *In re Schreck*, 642 S.W.3d 925, 927 (Tex. App.—Amarillo 2022, orig. proceeding); *In re Athans*, 458 S.W.3d 675, 676 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding). Texas Rules of Appellate Procedure 52.7 states in relevant part:

> (a)    Filing by Relator Required. Relator must file with the petition:
>
>> (1)    a certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding; and
>>
>> (2)    a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered in evidence, or a statement that no testimony was adduced in connection with the matter complained.

TEX. R. APP. P. 52.7(a). Under this rule, the items required to be included in a mandamus record are limited to what is "material" to the "claim for relief" and what is "relevant" to the "matter complained" of in the petition for writ of mandamus. *See id.* Accordingly, "the required contents for a record vary from case-to-case." *In re Monson Law Firm, LLC*, 714 S.W.3d 256, 264 (Tex. App.—Corpus Christi–Edinburg 2025, orig. proceeding).

Germania explains that there was no testimony or evidence presented at the two

8

hearings relating to the appraisal award other than the pleadings and attachments, which Germania has included in the mandamus record. Further, Germania provided verifications in its mandamus record and supplemental mandamus record stating in each instance that "[n]o testimony was adduced in connection with the matter complained." Based on the foregoing, we conclude that Germania's record is sufficient, and we reject Chapa's claims otherwise. *See* Tᴇx. R. Aᴘᴘ. P. 52.7(a); *In re Monson Law Firm, LLC*, 714 S.W.3d at 264.

## B.     Authority for Award

Chapa argued that the appraisal award should be set aside because the appraisal panel exceeded its authority by determining causation, coverage, and liability, "and impermissibly bootstrapping damages" from Chapa's prior insurance claim. Chapa specifically asserts that Stephenson and Spencer exceeded their authority by determining that certain damages to the home were not covered under the policy because of Chapa's prior insurance claim and by refusing to include the replacement cost for Chapa's roof in the new appraisal award. Chapa thus asserts that by delving into causation and prior claims, the appraisal panel "summarily" discredited new hail damages.

The Texas Supreme Court has held that the scope of appraisal concerns damages and not liability. *Johnson*, 290 S.W.3d at 890. In this regard, the court has explained that "[c]ausation relates to both liability and damages because it is the connection between them." *Id.* at 891. The court further stated that "when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability," and "[t]he same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition."

9

*Id.* at 891–92. Thus, "(1) appraisals necessarily include a causation element because setting the amount of loss requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else, and (2) appraisers may separate loss due to a covered event from a property's pre-existing condition." *In re Auto Club Indem. Co.*, 580 S.W.3d at 856–57; *see Tex. Windstorm Ins. Ass'n*, 561 S.W.3d at 276.

In the appraisal award, Stephenson and Spencer found no visible storm damage to the roof or fence and found damages to gutters, downspouts, a garage, and a pool. According to communications between the panel members, Stephenson served as the adjuster for Chapa's previous storm damage claim, and he identified certain damages to the roof as the same damages that were present in Chapa's previous insurance claim. As the Texas Supreme Court held in *Johnson*, the appraisal panel had authority to determine whether the damages they found were pre-existing or otherwise caused by a pre-existing condition. *See Johnson*, 290 S.W.3d at 891–92. We further note that the appraisal award expressly states that it "outlines the value of the damages and is not a confirmation of coverage." Under these circumstances, and in the absence of evidence otherwise, we conclude that Chapa has not met his burden to show that the appraisal panel acted outside of the scope of its authority. *See id.*; *In re Auto Club Indem. Co.*, 580 S.W.3d at 856–57.

## C.   Fraud, Accident, or Mistake

Chapa asserts that Spencer prematurely signed an award that failed to consider a "rebuttal report" submitted by Guerra-Prats and prepared by McCoy Construction Consulting (McCoy) regarding Stephenson's assessment of Chapa's damages. The

appraisal award was signed by Stephenson on April 15, 2024, and was signed by Spencer on April 16, 2024. The McCoy report is dated April 17, 2024. As stated previously, it appears that Guerra-Prats had difficulties receiving emails directly from Spencer; however, these same exchanges reflect that on March 29, 2024, Spencer informed the panel members that he would wait to make his decision until he received McCoy's report, then subsequently requested Guerra-Prats to supply McCoy's report on April 2, 2024, April 5, 2024, and again April 12, 2024, before signing the appraisal award. The record does not indicate whether Spencer subsequently reviewed McCoy's report.

An appraisal award may be set aside on the ground of mistake or accident only if the movant shows that the award does not reflect the intention of the appraisers. *Garcia v. Lloyds*, 514 S.W.3d 257, 269 (Tex. App.—San Antonio 2016, pet. denied), *disapproved of on other grounds by Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806 (Tex. 2019); *see also Dalton v. Republic Lloyds*, No. 07-22-00308-CV, 2023 WL 8270247, at *2 (Tex. App.—Amarillo Nov. 29, 2023, pet. denied) (mem. op.) (stating that the "evidence must illustrate that the appraisers were operating under a mistake of fact which resulted in an unintended award"); *Abdalla v. Farmers Ins. Exch.*, No. 07-17-00020-CV, 2018 WL 2220269, at *1 (Tex. App.—Amarillo May 14, 2018, no pet.) (mem. op.) (explaining that the doctrine of mistake applies in setting aside an appraisal award "when the complainant establishes that the appraisers were operating under a mistake of fact which resulted in an unintended award"). However, a mere difference of opinion between appraisers or an umpire's adoption of one appraiser's estimate does not constitute a mistake. *See Garcia*, 514 S.W.3d at 269; *MLCSV10 v. Stateside Enters., Inc.*, 866 F.Supp.2d 691, 702 (S.D. Tex. 2012); *see also Abdalla*, No. 2018 WL 2220269, at *2.

11

Here, Chapa's contentions are grounded in speculation and are not supported by evidence found in the record before us. Chapa has not met his burden to show that a mistake or accident occurred in the rendition of the award such that the award did not "speak" the intention of the appraisal panel. *See MLCSV10*, 866 F.Supp.2d at 702; *Garcia*, 514 S.W.3d at 269. We reject Chapa's arguments otherwise.

**D.      Compliance with the Policy**

Chapa argued that the appraisal award should be set aside because it was not made in compliance with the terms of the insurance policy. The policy states that "[i]n order for a person to be qualified to act as an appraiser, the person must be competent, independent, neutral and impartial." Chapa contends that Stephenson was not impartial, thus his involvement in the appraisal process violated the terms of the insurance policy. Chapa asserted that he raised issues of material fact concerning Stephenson's competence and impartiality because he showed that Stephenson adjusted Chapa's prior property damage claim and used that information to make a coverage determination in this case.

We have already considered and rejected Chapa's claim that the appraisal panel improperly determined causation. And while Chapa asserts that Stephenson was not competent or impartial, Chapa offers only speculative arguments in support of this contention. There is no evidence before us, for instance, that Stephenson had a financial interest in the award, that he was not acting independently, or that he was not competent to act as an appraiser. *See, e.g.*, *Gen. Star Indem. Co. v. Spring Creek Vill. Apartments Phase V, Inc.*, 152 S.W.3d 733, 737 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("An appraiser with a financial interest in the outcome of the appraisal is not impartial.");

12

*Gardner*, 76 S.W.3d at 143 (discussing the relationship between the insurer and an appraiser regarding the appraiser's impartiality); *see also In re Philadelphia Indem. Ins*, 2017 WL 5616272, at *3 (concluding that the trial court did not abuse its discretion in setting aside an appraisal award where an appraiser had voluntarily relinquished his adjuster's license and, in "an unrelated appraisal case, was found to have been engaging in the unauthorized practice of law on behalf of an insurance company"). We conclude that Chapa has not met his burden to show that Stephenson was not impartial or that the appraisal award was not made in compliance with the insurance policy.

## E.     Honest Assessment

Finally, Chapa argues that the appraisal award should be set aside because it is not an honest assessment regarding the necessary repairs. According to Chapa, the appraisal should have included the cost of the repairs in their entirety in the appraisal award and left Germania's liability up to the courts. However, "a finding of disparity, even gross disparity, between an appraisal award and the cost of repair, cannot support a finding of bias or partiality without additional evidence." *Hennessey v. Vanguard Ins.*, 895 S.W.2d 794, 799 (Tex. App.—Amarillo 1995, writ denied). Thus, without more, we reject Chapa's contention that the appraisal award did not reflect an honest assessment of the damages at issue.

## F.     Delay

Chapa contends that Germania waived its right to mandamus relief by delay. Chapa asserts that Germania waited 203 days after the trial court signed its order setting aside the appraisal award to file its petition for writ of mandamus, and it waited forty-two days after the trial court denied Germania's motion for reconsideration to file its petition

13

for writ of mandamus.

"Although mandamus is not an equitable remedy, its issuance is controlled largely by equitable principles." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009) (orig. proceeding) (per curiam). "One such principle is that '[e]quity aids the diligent and not those who slumber on their rights.'" *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding) (quoting *Callahan v. Giles*, 155 S.W.2d 793, 795 (Tex. 1941) (orig. proceeding)). "Thus, a relator who unduly or unreasonably delays filing a petition for mandamus relief may waive its right to such relief unless the delay is justified." *In re Am. Airlines, Inc.*, 634 S.W.3d 38, 43 (Tex. 2021) (orig. proceeding) (per curiam). Even a "significant" delay may be justified depending on the circumstances. *Id.*

To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting its rights and the moving party's good faith and detrimental change in position because of the opposing party's delay. *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding) (per curiam); *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989); *In re Mabray*, 355 S.W.3d 16, 22 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding [mand. denied]). Whether a party's delay in asserting its rights precludes mandamus relief depends on the circumstances. *In re Oceanografia, S.A. de C.V.*, 494 S.W.3d 728, 730 (Tex. 2016) (orig. proceeding) (per curiam). In examining this issue, we consider whether there is any justification for the delay, whether the party seeking mandamus relief bears fault for the delay, and whether the delay has prejudiced the opposing party. *See id.* at 730–31; *In re Allstate Fire & Cas. Ins.*, 617 S.W.3d 635, 642 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding). Under appropriate circumstances, we may assess the period of delay from the date the

14

trial court denied reconsideration or rehearing of the relevant ruling. *See In re Laibe Corp.*, 307 S.W.3d at 318; *see also In re First Rsrv. Mgmt., L.P.*, No. 09-24-00203-CV, 2025 WL 480807, at *2 (Tex. App.—Beaumont Feb. 13, 2025, orig. proceeding) (mem. op. per curiam); *In re Five Star Glob., LLC*, No. 05-22-00153-CV, 2022 WL 3354136, at *4 (Tex. App.—Dallas Aug. 15, 2022, orig. proceeding) (mem. op.).

We examine the specific circumstances of the case to determine whether Germania's delay in asserting its rights precludes mandamus relief. *See In re Oceanografia, S.A. de C.V.*, 494 S.W.3d at 729. On August 19, 2024, the trial court granted Chapa's motion to set aside the appraisal award. On October 7, 2024, Germania filed its motion seeking reconsideration of that award. That same day, Chapa filed a response to Germania's motion for reconsideration. On October 29, 2024, Chapa filed an amended response. On January 27, 2025, the trial court denied Germania's motion for reconsideration. On March 10, 2025, Germania filed this petition for writ of mandamus.

Germania asserts that it did not unreasonably delay in seeking relief and asserts, in relevant part, that during the interim it sought reconsideration of the trial court's ruling and attended to various other litigation matters that hindered its ability to seek mandamus relief. Germania points to various pleadings to support its contention, including Chapa's "Renewed Motion for Appointment of an Umpire," filed on January 6, 2025; Germania's "Supplement to Motion to Clarify and/or Reconsider" an order striking the requirement for the AAA to appoint the appraisal umpire, filed on February 6, 2025; Chapa's "Motion to Clarify and/or Reconsider" an order on a motion to compel written discovery, filed on February 12, 2025; Chapa's "Motion for a Finding of Waiver of Appraisal," filed on March 3, 2025; and Germania's "Response to [Chapa's] Motion for a Finding of Waiver of

15

Appraisal," filed on March 14, 2025.

Chapa argues, without citation to the record, that he has been prejudiced because he has had to engage in "further motion practice [and] extensive discovery," and this "has required the presence of counsel at multiple hearings—all of which is antithetical to the purpose of appraisal." Chapa's contentions regarding prejudice are conclusory and are based on events that occur in the normal course of litigation. *Cf. In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d at 412 (stating that "it is difficult to see how prejudice could ever be shown" when the policy provides both parties with "the same opportunity to demand appraisal").

After reviewing the period of the alleged delay and the specific facts and circumstances of this case, we conclude that the delay does not bar mandamus relief. *See In re Oceanografia, S.A. de C.V.*, 494 S.W.3d at 730–31.

## G. Remedy by Appeal

Finally, Chapa asserts that mandamus should not issue because Germania possesses an adequate remedy by appeal to address any error. As we have stated, appraisal awards may be routinely reviewed by appeal after final judgment. *See In re Tex. Mun. League Intergovernmental Risk Pool*, No. 13-20-00486-CV, 2021 WL 743305, at *2 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, orig. proceeding [mand. denied]) (mem. op.) (collecting cases); *see, e.g.*, *Zhu v. First Cmty. Ins.*, 543 S.W.3d 428, 430 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd). However, in accordance with our standard of review for original proceedings, we weigh the benefits of mandamus review against the detriments using a fact-specific analysis particular to the case at hand. *In re Acad., Ltd.,* 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding); *see In re Prudential Ins.*

16

*Co. of Am.*, 148 S.W.3d at 135–36.

Having done so, we conclude that Germania lacks an adequate remedy by appeal. In this regard, we note that the Fourteenth Court of Appeals has concluded that appeal is not an adequate remedy for an order setting aside an appraisal award because there is "no material difference between a trial court's improper refusal to enforce an appraisal clause and a trial court's improper setting aside an appraisal award—they both may vitiate or severely comprise the defendant's ability to defend against the plaintiff's breach of contract claim." *See In re Auto Club Indem. Co.*, 580 S.W.3d at 857.

And here, the trial court has improperly set aside the appraisal award, and Chapa has now filed a motion asserting that Germania has waived its right to appraisal altogether. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 140 (noting that the supreme court has issued mandamus "to enforce contractual rights" and has done so "to enforce the parties' agreement to submit to an appraisal process for determining the value of a vehicle claimed to be a total loss"); *see also In re State Farm Lloyds*, 2023 WL 2029148, at *1. We thus conclude that Germania lacks an adequate remedy by appeal.

## H. Summary

Chapa bore the burden of proof to set aside the appraisal award. *See In re Auto Club Indem. Co.*, 580 S.W.3d at 855; *see also In re Philadelphia Indem. Ins.*, 2017 WL 5616272, at *2. Thus, he was required to raise an issue of material fact regarding why the resolution that he contractually agreed to should be set aside. *See Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 844 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Lundstrom*, 192 S.W.3d at 87. While Chapa offered various arguments for setting aside the appraisal award, he offered speculation and not evidence in support of those

17

arguments. *See In re Auto Club Indem. Co.*, 580 S.W.3d at 855. We conclude that Chapa failed to meet his burden to set aside the appraisal award, and accordingly, the trial court abused its discretion by granting the motion to set it aside. *See id.*; *Nat'l Sec. Fire & Cas. Co.*, 523 S.W.3d at 844; *see also In re Philadelphia Indem. Ins.*, 2017 WL 5616272, at *2.

## V.     CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, Chapa's response, Germania's reply, and the applicable law, is of the opinion that Germania has met its burden to obtain relief. Accordingly, we conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its orders setting aside the appraisal award and denying reconsideration of that ruling. Our writ will issue only if the trial court fails to promptly comply.

JAIME TIJERINA
Chief Justice

Delivered and filed on the
4th day of August, 2025.

18